SRM

1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Kenneth W. Reed,**
Petitioner
-vs-
**Dora B. Schriro, et al.,**
Respondent(s)

CV-04-2755-PHX-JAT (JI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

11

## I. MATTER UNDER CONSIDERATION

12

Petitioner, presently incarcerated in the Arizona State Prison, filed through counsel a

13

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 3, 2004 (#1).

14

On April 21, 2005, Respondents filed their Response (#13).   Petitioner filed a Reply on

15

August 31, 2005 (#20).

16

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned

17

makes the following proposed findings of fact, report, and recommendation pursuant to Rule

18

8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28

19

U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

20
21

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

22

### A. FACTUAL BACKGROUND

23

Petitioner was convicted of robbing, together with an accomplice,  a Loomis Armored

24

Car office in Yuma, Arizona on December 11, 1989.[1]  Petitioner was first implicated in the

25

crime in 1992, when Petitioner assaulted his then wife Mary Reed, resulting in her reporting

26
27
28

---

[1] Response, #13, Exhibit C, Appellate Decision at 2.  (Exhibits to the Response are referenced hereinafter as "Exhibit ___".)

to the FBI that Petitioner had confessed being involved in the Loomis robbery.[2]  Federal authorities ultimately did not prosecute, and did not refer the matter to Maricopa County Attorney's office for prosecution until 1996.[3]

Petitioner and Mary separated in 1992 and divorced on May 23, 1994.  On September 22, 1994, Petitioner was convicted of aggravated assault as result of his 1992 assault on Mary and was serving his sentences on those convictions at the time of the prosecution in this case.[4]

**B. PROCEEDINGS AT TRIAL**

Petitioner was indicted in the Yuma County Superior Court on September 5, 1996 on one count each of armed robbery, conspiracy to commit armed robbery, and theft.[5]  At arraignment, appointed counsel Ronald Jones (who had not yet spoken to Petitioner) appeared and consented to waive the reading of the indictment and advice to Petitioner of his rights.[6] Unhappy with the waiver, Petitioner discharged appointed counsel, and began representing himself.[7]  However, advisory counsel was appointed for Petitioner for his pretrial proceedings.[8]

Throughout the pre-trial proceedings, Petitioner wrangled with the jail staff and the trial court about his limited access to the law library, limited writing materials, interference with his legal mail, inadequate light and desk space, etc..[9]

Trial was originally set for December 18, 1996.  However, on December 13th, the State moved to continue the trial, purportedly to allow Defendant more time to prepare.  Over Petitioner's objection, the trial court granted the motion, and reset the trial for January 9, 1997.  The state then filed several motions to introduce various evidence, including testimony

---

[2] *Id.* at 3-4.
[3] *Id.* at 2.
[4] *Id.* at 4.
[5] Exhibit A, Indictment.  The theft charge was subsequently dismissed.  Exhibit C, Appellate Decision at 6.
[6] Exhibit K, PCR Petition at 6.
[7] *Id.*
[8] Exhibit C, Appellate Decision at 4; Exhibit F, Supplemental Brief at 9.
[9] Traverse, #20, Exhibit B, Notice of Inability to Prepare Defense, etc.; Exhibit B, Appellate Decision at 5.

by Petitioner's ex-wife, and evidence of an uncharged robbery of a Best Buy store.[10]

On January 7, 1997, Petitioner executed a formal waiver of counsel.[11]  On January 9, 1997, at the request of Petitioner and counsel, the previously appointed public defender withdrew as advisory counsel, and contract counsel was appointed.  Petitioner also secured the appointment of a private investigator.[12] On January 10, 1997, Petitioner filed his own motion to continue, obtaining a continuance until April 15, 1997.[13]  Petitioner again moved for a continuance, resulting in trial being reset to July 8, 1997.[14]  Trial was ultimately begun on that date.

After selection of the jury, Petitioner filed a motion withdrawing his wavier of counsel, but claiming that the withdrawal was involuntary.  The trial court advised Petitioner that unless he voluntarily withdrew his waiver of counsel and requested appointed counsel, his motion would not be granted.  Petitioner initially refused, but after a day of trial requested advisory counsel and a continuance to recall out-of-state alibi witnesses he had already dismissed. The trial court offered a short continuance, but Petitioner declined.[15]

Petitioner proceeded through the trial, but made no opening statement or final argument, did not object to any evidence or cross-examine any witnesses, and presented no evidence of his own.[16]  Petitioner was convicted of the robbery and conspiracy counts.

Petitioner moved for a new trial and appointment of advisory counsel.  The motion for new trial was denied, but advisory counsel was appointed for sentencing.  On August 7, 1997, Petitioner was sentenced to two, consecutive prison terms of 21 years each.[17]

## C.  PROCEEDINGS ON DIRECT APPEAL

Attorney John Serrano was appointed to represent Petition on appeal.  Unable to find

---

[10] Exhibit C, Appellate Decision at 4-5.
[11] Exhibit C, Appellate Decision at 4.
[12] Exhibit C, Appellate Decision at 5.
[13] Exhibit E, Opening Brief at 7.
[14] Exhibit E, Opening Brief at 8.
[15] Exhibit C, Appellate Decision at 6-7.
[16] Exhibit C, Appellate Decision at 7.
[17] Exhibit C, Appellate Decision at 7-8.

an appealable issue, counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).[18] Petitioner subsequently filed a Supplemental Brief, with an expansive statement of the procedural background of the case, but no legal arguments. However, the brief did assert the following "issues":

    (1)    speedy trial violation by granting motion to continue;

    (2)    speedy trial violation by denying motion to dismiss;

    (3)    the speedy trial violations denied Petitioner his right to due process under the Fourteenth Amendment;

    (4)    denial of right to represent himself in violation of the Fifth, Sixth and Fourteenth Amendments;

    (5)    admission of prior bad acts were a violation of due process rights under the Fifth and Fourteenth Amendments;

    (6)    denial of due process under the Fourteenth Amendment by denial of challenge to sufficiency of prior conviction;

    (7)    judicial bias in violation of due process rights under Fifth and Fourteenth Amendments;

    (8)    Petitioner was coerced to waive his right to testify because of threatened impeachment with an unproven prior conviction, in violation of the Fifth, Sixth and Fourteenth Amendments;

    (9)    denial of motion for change of judge at sentencing was a violation of due process rights under the Fifth and Fourteenth Amendments;

    (10)    sentence exceeded authorized sentence and was excessive, resulting in cruel and unusual punishment under the Eighth Amendment; and

    (11)    the pre-indictment delay denied Plaintiff's due process rights under the Fifth and Fourteenth Amendments.[19]

Petitioner's appeal was denied. Petitioner filed a Petition for Review by the Arizona

---

[18] Exhibit E, Appellant's Opening Brief.
[19] Exhibit F, Supplemental Brief at 23-24.

Supreme Court.[20]  That petition was denied on June 4, 1999.  The Order and Mandate was issued November 4, 1999.[21]

## D.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF

In the meantime, on June 15, 1999, Petitioner filed his first Notice of Post Conviction Relief.[22]  On April 14, 2000, Petitioner filed his Petition for Post-Conviction Relief, asserting the following grounds for relief:

(1)   Petitioner received ineffective assistance from counsel at arraignment.

(2)   Petitioner received ineffective assistance of counsel from post-trial counsel in presenting a motion to dismiss.

(3)   Petitioner received ineffective assistance from appellate counsel, who failed to obtain or review the complete record.

(4)   Petitioner was denied his right to appeal when he was denied records and transcripts.

(5)   Petitioner was denied equal protection when he was denied records and transcripts.

(6)   Petitioner was denied his right to represent himself when he was denied access to a law library and assistance of someone trained in the law..

(7)   Petitioner was denied due process when he was denied access to a law library and assistance of someone trained in the law.

(8)   Petitioner was denied due process when the appellate court refused to transfer the case despite their bias.

(9)   Petitioner was denied due process when the appellate court decided his case without a full record.

(10)  Petitioner was denied due process and his right to a meaningful appeal when the

---

[20] Exhibit G, Petition for Review.
[21] Exhibit I, Order and Mandate.
[22] Exhibit J, Notice of PCR.

appellate court lied about having fully reviewed the record, when they did not

have the full record.[23]

Again, Petitioner made a detailed description of events, but did not make any legal arguments, asserting that he was denied access to a law library.[24]  The trial court denied the PCR petition on August 11, 2000.[25]  However, the trial court did appoint counsel to assist Petitioner with seeking review of the Court's Order.  A series of three attorneys ultimately were appointed, but the conclusion of the last was that there was no basis for review.[26]

Petitioner subsequently filed a Petition for Review by the Arizona Court of Appeals, raising the same issues as asserted in his PCR petition.[27]  The petition was summarily denied.[28]  Petitioner then sought review by the Arizona Supreme Court,[29] which was again summarily denied on January 30, 2003.[30]


**E.  PROCEEDINGS ON SECOND POST-CONVICTION RELIEF**

In the interim, on or about April 24, 2002, Petitioner filed his second notice of post-conviction relief.[31]  This notice asserted a single ground for relief, based upon the decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The petition was denied on May 1, 2002.[32]

Petitioner filed a Petition for Review by the Arizona Court of Appeals,[33] which was summarily denied on June 13, 2003.[34]  Petitioner then sought review by the Arizona Supreme Court, which was denied on December 5, 2003.[35]

---

[23] Exhibit K, PCR Petition at 26-27.
[24] *Id.* at 28.
[25] Exhibit N, Order 8/11/00.
[26] Exhibit T, Order 5/1/02.
[27] Exhibit O, Petition for Review.
[28] Exhibit P, Order 10/9/02.
[29] Exhibit Q, Petition for Review by Arizona Supreme Court.
[30] Exhibit R, Order 1/30/03.
[31] Exhibit S, PCR Notice.
[32] Exhibit T, Order 5/1/02.
[33] Exhibit U, Petition for Review on 2nd PCR.
[34] Exhibit V, Order 6/13/03.
[35] Exhibit W, Order 12/5/05.

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

Petitioner filed the present habeas petition on December 3, 2004.  The Petition (#1) asserts the following nine grounds for relief:

(1)   Denial of speedy trial rights by grant of prosecutions' motion to continue.

(2)   Denial of right of self representation by denial of access to law library, and access to adequate writing materials, discovery materials and evidence.

(3)   Denial of due process by admission of prior bad acts evidence of Petitioner' assault on his wife and the robbery of the Best Buy store.

(4)   Denial of right to testify by permitting impeachment with a prior conviction, the sufficiency of which the trial court refused to allow Petitioner to challenge.

(5)   Petitioner's sentences were excessive and therefore cruel and unusual punishment, and were imposed in violation of *Apprendi,* and *Blakely v. Washington*, 542 U.S. 296 (2004).

(6)   Denial of due process by excessive pre-indictment delay.

(7)   Ineffective assistance of appellate counsel by filing an *Anders* brief without reviewing the entire record.

(8)   Ineffective assistance of counsel at arraignment.

(9)   Denial of due process by appellate court's ruling on *Anders* brief and supplemental brief without reviewing entire record.

Defendants filed their Answer (#13) on April 21, 2005.  Defendants concede that the Petition is timely, but challenge each of the grounds for relief on the basis of procedural default and/or as to its merits.  Petitioner filed his Traverse (#20) on August 31, 2005.

## III. APPLICATION OF LAW TO FACTS

**A.  GROUND 1 - DENIAL OF SPEEDY TRIAL RIGHTS**

For his first Ground for Relief, Petitioner argues that he was denied his speedy trial

1   rights when the prosecution's motion to continue the trial was granted.[36]

2

3   **1.  Procedural Default**

4   Respondents argue that Petitioner has failed to exhaust his state remedies on this claim,

5   because he never fairly presented the claim as a federal claim. [37]   Petitioner replies that this

6   claim is exhausted because: (1) a constitutional analysis is implicit in the review of any speedy

7   trial claim, and (1) Petitioner's PCR Petition included the statement that it sought relief from

8   the "abridgment of any other right guaranteed by...the constitution of the United States."

9   Petitioner further argues that his failure to properly present the claim was caused by

10   ineffective assistance of appellate counsel, who filed an *Anders* brief without adequately

11   reviewing the record.[38]

12   **Exhaustion Required** - Generally, a federal court has authority to review a federal

13   constitutional claim presented by a state prisoner only if available state remedies have been

14   exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)(per curiam). The exhaustion doctrine,

15   first developed in case law has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking

16   habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.

17   *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S.

18   1023 (1982).

19   Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

20   raise the claim in a direct appeal or collaterally attack his conviction in a petition for

21   post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

22   1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

23   petition in federal court.   This is true even where alternative avenues of reviewing

24   constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211

25   (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

26

27   [36] Petition, #1 at 5.
      [37] Answer, #13 at 15-19.
28   [38] Traverse, #20 at 12-14.

- 8 -

1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

**Fair Presentment** - To result in exhaustion, claims must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254; *Picard v. Connor*, 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small,* 315 F.3d 1063, 1066 (9th Cir. 2003).

Moreover, the federal issue must be raised directly, and not by inference or imputation. The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). Here, although Petitioner challenged the speediness of his trial in his appellate brief, he made no reference to any federal law in connection with that issue.[39]  The reference to "speedy trial" can arise under state law as well as federal law.  *See* Ariz. R.Crim.Proc. Rule 8.1 *et seq.*(speedy trial rules); A.R.S. § 13-114 (right to speedy trial); A.R.S. Const. Art. 2 § 24 (right "to have a speedy public trial"); *State v. Tucker,* 133 Ariz. 304, 308, 651 P.2d 359, 363 (Ariz. 1982) (recognizing that Arizona's speedy trial right "is more restrictive of the state than the Sixth Amendment").  Indeed, Plaintiff did not cite Sixth Amendment at all in connection with his speedy trial claims, but did reference his "statutory right to a speedy trial" and his "right to procedural due process under the Fourteenth Amendment." [40]  It is not "enough to raise a state claim that is analogous or closely similar to a federal claim." *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2005).

Moreover, the closest Plaintiff came to raising this claim in his PCR proceedings was

---

[39] Exhibit F, Supplemental Brief at 23.
[40] Exhibit F, Supplemental Brief at 23, ¶. C.  *See also* Exhibit G, Petition for Review at 2.

1   to assert that counsel was ineffective in arguing the motion to dismiss based upon speedy trial

2   and delay issues.[41]  The presentation of a constitutional claim "as one of several issues which

3   were handled ineffectively by his trial and appellate counsel" is not sufficient to exhaust the

4   underlying claim. "While [the ineffective assistance and underlying constitutional claim are]

5   admittedly related, they are distinct claims with separate elements of proof, and each claim

6   should have been separately and specifically presented to the state courts." *Rose v. Palmateer,*

7   395 F.3d 1108, 1112 (9th Cir. 2005).

8          Accordingly, Plaintiff's Sixth Amendment claim was not fairly presented on direct

9   review, or in Petitioner's PCR proceedings. Ordinarily, therefore, Plaintiff's claim would be

10  unexhausted and subject to dismissal. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir.

11  1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

12         **Procedural Default** - However, Respondents argue that Plaintiff has not merely failed

13  to exhaust, but has procedurally defaulted his un-presented claims. As an alternative to

14  presenting his claims to the highest state court, a petitioner can satisfy the exhaustion

15  requirement by demonstrating that no state remedies remained available at the time the federal

16  habeas petition was filed.  *Engle v. Isaac*, 456 U.S. 107, 125 (n. 28)(1982); *White v. Lewis*,

17  874 F.2d 599, 602 (9th Cir. 1989).  If, however, the procedural bar is of the petitioner's own

18  making, then he may be precluded from seeking habeas relief.

19              If state remedies are not available because the petitioner failed to
                comply with state procedures and thereby prevented the highest state
20              court from reaching the merits of his claim, then a federal court may
                refuse to reach the merits of that claim as a matter of comity.

21  *Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988).  This failure to comply with reasonable

22  state procedures is usually characterized as "procedural default."    Where an unexhausted

23  claim would clearly be barred as a result of a procedural default, dismissal without prejudice

24  is not necessary, and the claim may be dismissed with prejudice as procedurally defaulted.

25  *Johnson v. Lewis*, 929 F.2d 460 (9th Cir. 1991).  Indeed, it appears that because of Plaintiff's

26  failure to assert this claim earlier, it is now barred from consideration.

27  _____

28     [41] *See* Exhibit O, Petition for Review on PCR at 4-5.

Plaintiff can no longer seek direct review.  Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.

Similarly, Plaintiff can no longer seek review by petition for post-conviction relief. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).

While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him.   The excepted claims are:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> > (1)     The newly discovered material facts were discovered after the trial.
> > (2)     The defendant exercised due diligence in securing the newly discovered material facts.
> > (3)     The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact- finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

1    Paragraph (d) (expired sentence) has no application to Petitioner who is simply

2    attacking the validity of his conviction.  Nor does Petitioner assert any "newly discovered"

3    evidence, and thus paragraph (e) has no application.  Paragraph (f) has no application because

4    Petitioner filed a timely notice of appeal, and the notice of post-conviction relief of-right

5    applies only to petitions filed following a guilty or nolo contendre plea.  *See* Ariz.R.Crim.P.

6    32.1 (defining when petition of-right).  *See also Moreno v. Gonzalez,* 192 Ariz. 131, 962 P.2d

7    205 (1998) (on certified question holding that "notice of appeal" in 32.1(f) is direct appeal

8    only, and not appeal from denial of post-conviction relief).  Paragraph (g) has no application

9    where because Petitioner has not asserted a change in the law.  Finally, paragraph (h) has no

10   application because the claim is not based upon an assertion of facts establishing the

11   petitioner's innocence, but merely upon a procedural error.

12   Accordingly, it appears that Petitioner's speedy trial claim is procedurally defaulted.

13   Dismissal with prejudice of a procedurally barred or procedurally defaulted habeas claim is

14   generally proper absent "cause and prejudice" to excuse the default.  *Reed v. Ross*, 468 U.S.

15   1, 11 (1984); *Tacho v. Martinez,* 862 F.2d 1376, 1380 (9th Cir. 1988).

16   **Cause and Prejudice** - If the habeas petitioner has procedurally defaulted on a claim,

17   he may not obtain federal habeas review of that claim absent a showing of "cause and

18   prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Although

19   both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not

20   examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac,*

21   456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

22   **Cause** - "Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d

23   1119, 1123 (9th Cir. 1991). "Because of the wide variety of contexts in which a procedural

24   default can occur, the Supreme Court 'has not given the term "cause" precise content.'"

25   *Harmon v. Barton,*  894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13),

26   *cert. denied,* 498 U.S. 832 (1990).

27   Here, the only "cause" asserted by Petitioner is his claim that "the agents of the State

28   of Arizona (officers within the prison system) prevented Petitioner from researching his issue,

so his opening brief has nothing about the speedy trial except for the issue (no argument)."[42]
A pro se petitioner may be able to establish cause if he can establish a lack of access to the
law, as opposed to a lack of knowledge of the law. *See e.g. Dulin v. Cook*, 957 F.2d 758 (10th
Cir. 1992) (remanding for a determination of cause where a pro se petitioner's incarceration
in Nevada precluded access to Utah legal materials required to challenge a Utah conviction).
*Compare Whalem/Hunt v. Early*, 204 F.3d 907 (9th Cir. 2000) (holding lack of library
materials may establish an "impediment" which would toll the statute of limitations applicable
to habeas petitions).   The petitioner must establish, however, that the lack of access resulted
in an inability to assert his claims. *See e.g. Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991)
(finding no "cause" where despite lack of resources generally, pro se prisoner had not shown
personal deprivation, and had managed to file other adequate petitions.)

Petitioner's claim of denial of access to research is conclusory and unsupported.
Petitioner's Supplemental Brief was dated September 18, 1998.  His appellate counsel's
*Anders* brief was filed April 11, 1998.  Accordingly, the relevant time to consider Petitioner's
library access was during the period April to September, 1998.  Although he presents a variety
of records on his litigation woes during trial while incarcerated in the Yuma County jail,[43]
Petitioner presents no evidence that he was denied access to legal materials during the time
frame he would have drafted his appellate brief, which by his return address he would have
prepared while incarcerated at the Arizona State Prison Complex in Tucson, Arizona.

Moreover Petitioner's appellate brief shows he did in fact have access to legal
materials.  His Supplemental Appellate Brief cites four different constitutional provisions,
including the Sixth Amendment, as well as three state statutes, and 15 state court rules.[44]  He
further cited a series of other legal materials, including the Arizona Law of Evidence and
Corpus Juris Secundum, etc., arguing that he had been denied access to these during trial,

---

[42] Traverse, #20 at 6.
[43] *See e.g.*, Traverse, #20, Exhibit A, Petitioner's Affid. (referencing 1996 events); Exhibit C (prisoner requests in 1996).
[44] Exhibit F, Table of Authorities, at ii to iii.

1    thereby  suggesting that he had access to such materials at the time of his appellate brief.[45]

2        Petitioner has failed to show that his failure to assert a Sixth Amendment Speedy Trial

3    claim was caused by any lack of access to legal materials.   Accordingly, Petitioner has failed

4    to show "cause" to excuse his procedural default.

5        **Prejudice** - Even if Petitioner could show cause, he must also show "prejudice."

6    "'Prejudice' is actual harm resulting from the alleged constitutional violation. *Thomas v.*

7    *Lewis,* 945 F.2d 1119, 1123 (9th Cir. 1991). Establishing prejudice requires showing "not

8    merely that the errors of [petitioner's] trial created a possibility of prejudice, but that they

9    worked to his actual and substantial disadvantage, infecting his entire trial with error of

10   constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

11       Respondents argue that Petitioner cannot show prejudice because his speedy trial claim

12   is without merit.  Petitioner argues that his speedy trial rights were denied when, on December

13   13, 1996, one week prior to the first scheduled trial date, the State's motion to continue was

14   granted.  On December 17, 1996, the trial date was reset to January 16, 1997, and later moved

15   to January 14, 1997.  On January 10, 1997, Petitioner filed his own motion to continue,

16   obtaining a continuance until April 15, 1997.  Petitioner again moved for a continuance,

17   resulting in trial being reset to July 8, 1997.  Trial was ultimately begun on that date.

18       At the outset, it should be noted that the delay in bringing charges against Plaintiff is

19   irrelevant for Sixth Amendment, Speedy Trial purposes.  Prior to indictment or the bringing

20   of charges, it is the Due Process Clause which governs delay, and only after "a formal

21   indictment or information or else the actual restraints imposed by arrest and holding to answer

22   a criminal charge'" does the Sixth Amendment apply. *Arnold v. McCarthy,* 566 F.2d 1377,

23   1382 (9th Cir. 1978) (quoting *U.S. v. Marion*, 404 U.S. 307, 320 (1971)).

24       In reviewing a Sixth Amendment speedy trial clause violation, the Court must consider

25   four factors: (1) the length of the pretrial delay; (2) the reason for the delay; (3) whether the

26

27       [45] *Cf. Reed v. Stewart*, CV-97-2356-PHX-JAT(SLV), Report & Recommendation, #119 at 25-26, rejecting a claim
28   of "cause" based upon lack of access to law library in Petitioner's federal habeas attacking his state conviction for the
     altercation with his wife.

- 14 -

1   defendant asserted his speedy trial right; and (4) prejudice to the defendant. *Barker v. Wingo*,

2   407 U.S. 514, 530 (1972)). "None of these factors are either a necessary or sufficient

3   condition to a finding of a deprivation of the right to a speedy trial." *United States v. Williams,*

4   782 F.2d 1462, 1465 (9th Cir.1985).

5   <u>Length of Pretrial Delay</u> - The primary inquiry is whether the trial was, in fact, not

6   speedy. "Simply to trigger a speedy trial analysis, an accused must allege that the interval

7   between accusation and trial has crossed the threshold dividing ordinary from 'presumptively

8   prejudicial' delay, since, by definition, he cannot complain that the government has denied him

9   a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v.*

10   *U.S.,* 505 U.S. 647, 651-652 (1992). In this case, Petitioner was indicted on September 26,

11   1996 and his trial ultimately began on July 8, 1997, a delay of a little more than 9 months.

12   "Depending on the nature of the charges, the lower courts have generally found post-

13   accusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett,* 505

14   U.S. at 652, n. 1. The Ninth Circuit has recognized that a sixth-month delay is a "borderline

15   case," although there is a general consensus among the other courts of appeals that eight

16   months constitutes the threshold minimum. *U.S. v. Gregory,* 322 F.3d 1157, 1162 (9th Cir.

17   2003). Here, given the nature of this prosecution as a relatively straightforward armed robbery

18   case, the delay of over 9 months is sufficiently long to raise a presumption of prejudice.

19   The determination of presumptive prejudice is, however, only the first half of the

20   inquiry on the length of delay. "[T]he court must then consider, as one factor among several,

21   the extent to which the delay stretches beyond the bare minimum needed to trigger judicial

22   examination of the claim. This latter enquiry is significant to the speedy trial analysis because

23   ... the presumption that pretrial delay has prejudiced the accused intensifies over time."

24   *Doggett,* 505 U.S. at 652. While sufficient to create a presumption of prejudice, the 9 month

25   delay  was not so extraordinary as to weigh heavily in Petitioner's favor. *Compare Doggett*,

26   505 U.S. at 652 (8½ year delay) *with* U.S. v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003) (22

27   month delay "not excessively long");  *U.S. v. Tanh Huu Lam,* 251 F.3d 852, 856 (9th Cir.

28   2001) (15-month delay was long enough to trigger *Barker* inquiry, but only "militate[d]

1   slightly in Lam's favor"); *U.S. v. Beamon,* 992 F.2d 1009, 1014 (9th Cir. 1993) (17-month and

2   20-month delays were not "great").

3        Reason for Delay - The second *Barker* factor is the reason for the delay in the trial.

4            A deliberate attempt to delay proceedings to hamper the defense counts
             heavily against the government. "A more neutral reason such as
5            negligence or overcrowded courts should be weighed less heavily, but
             nevertheless should be considered since the ultimate responsibility for
6            such circumstances must rest with the government rather than the
             defendant." On the other hand, delay attributable to the defendant's own
7            acts or to tactical decisions by defense counsel will not bolster
             defendant's speedy trial argument.

8   *McNeely v. Blanas,* 336 F.3d 822, 827 (9th Cir. 2003) (quoting *United States v. Goeltz,* 513

9   F.2d 193, 197 (10th Cir. 1975)).

10       Here, the only delay occasioned directly by the State was that from the original trial

11  date of December 18, 1996 until Petitioner sough his own continuances beginning on January

12  10, 1997.  Petitioner argues that this continuance was not sought to allow Petitioner, as a *pro*

13  *se* prisoner litigant, additional time to prepare his defense, as the Arizona Court of Appeals

14  concluded.  Rather, Petitioner argues, it was sought to gain the prosecution time to properly

15  disclose then undisclosed witnesses and evidence which it would otherwise have been

16  precluded from offering at trial.[46]  If Petitioner is correct, then the candidness of the

17  prosecution would certainly be in question.   However, if Petitioner is correct, the

18  prosecution's reason for delay would not be to improperly hamper the defense, but to

19  adequately prepare their own case.  While Petitioner is entitled to a speedy trial, he is not

20  entitled by the Sixth Amendment to win by default simply because the prosecution has been

21  less than perfect in preparing its case.

22       Further, the remaining continuances were sought by Petitioner.  However, Petitioner

23  argues that his own continuances were sought only because the collateral effect of the State's

24  continuance was that "the flood gates were opened concerning discovery."[47]  Therefore,

25  Petitioner argues, the State should be assessed responsibility for all the delay.  Alternatively,

26

27  _____

28      [46] Traverse, #20 at 16.
        [47] Traverse, #20 at 16-17.

- 16 -

1   Petitioner argues that his continuances should be discounted because "the time that he needed

2   should never have materialized, for the case should have been dismissed for failure to

3   prosecute within the prescribed time limits."[48]

4       Petitioner's arguments presuppose that the State's initial continuance was improperly

5   obtained.  Petitioner does not assert a federal basis for such a claim,[49] and the Arizona Court

6   of Appeals has already established that the continuance was proper under state law.  This

7   federal habeas court is not free to revisit decisions of state law.  *Bains v. Cambra*, 204 F.3d

8   964, 971 (9th Cir. 2000) ("federal court is bound by the state court's interpretations of state

9   law").  Accordingly, this Court must conclude that the reason for most of the delay was

10  Petitioner's need for time to prepare his defense.

11      What little delay is attributable to the prosecution has not been shown to have been a

12  "deliberate attempt to delay proceedings to hamper the defense," *McNeely,*336 F.3d at 827,

13  and accordingly is weighed less heavily in Petitioner's favor.

14      <u>Assertion of Right</u> - The third *Barker* factor is whether the Petitioner timely asserted

15  his speedy trial rights.  Although Petitioner did so initially, objecting to the continuance

16  granted to the State, [50] and filing, on January 6, 1997 a motion to dismiss based upon

17  Petitioner's "statutory right to a speedy trial,"[51]  Petitioner did not subsequently challenge the

18  trial delays.[52]  Nor did he ever assert his constitutional rights to a speedy trial.  In light of

19  Petitioner's own motions to continue, his assertion of his speedy trial rights weighs only

20  slightly in his favor.  *See U.S. v. Loud Hawk,* 474 U.S. 302, 314 (1986) (assertions of speedy

21  trial rights "must be viewed in the light of [the defendant's] other conduct" including delays

22  thereby occasioned).

23      <u>Actual Prejudice</u> - The final *Barker* factor is the actual prejudice suffered by the

24

25      [48]  Traverse, #20 at 16.
26      [49]  Given the short time of four months between the indictment on September 5, 1996 and the rescheduled trial date of January 9, 1997, there would be no constitutional basis to challenge the continuance granted to the prosecution.
27      [50]  Exhibit E, Appellant's Opening Brief at 6.
        [51]  Exhibit F. Supplemental Opening Brief at 11.
28      [52]  Petitioner did, through defense counsel, challenge the pre-indictment delays in an unsuccessful  post-trial motion.  Exhibit M, Reply re PCR at 6.

Petitioner.  Actual prejudice is typically demonstrated in three ways: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired." *Doggett*, 505 U.S. at 654 (internal quotation marks and citations omitted).

Petitioner cannot complain of "oppressive pretrial incarceration."  Petitioner was already incarcerated and serving out his sentence on other charges, having been transferred to Yuma County on a writ of *habeas corpus ad prosquendum*.[53]  Petitioner does complain that during the pretrial proceedings he missed parole hearings on his other convictions, having been told "you don't get a parole hearing when you are in county jail."[54]  However, Petitioner does not indicate any reason to believe that his attendance at those hearings would have resulted in his release.

Petitioner does not show any prejudice to his defense.  He does summarily argue that "[h]ad the State been forced to got to trial on the 18th day of December, 1996, there would have been no conviction."[55]  However, Petitioner does not support this conclusion.  Perhaps Petitioner refers to his belief that he would have been able to secure an acquittal or dismissal on the original trial date because of the prosecution's lack of preparation.  However, lack of preparation of the prosecution is not a defense.

This factor does not weigh in Petitioner's favor.

<u>Summary</u> - Here, none of the factors weight significantly in Petitioner's favor.  The delay in trial was not extraordinary in length, and the delay was due largely to Petitioner's own requests for continuances.  Petitioner ceased asserting his speedy trial rights after the first motion was denied, and thereafter sought most of the delay by his own motions to continue.  Petitioner has failed to establish any substantial actual prejudice.   Weighing all of the factors together, the undersigned cannot conclude that Petitioner's speedy trial rights were violated, and thus cannot find "prejudice" from any failure to exhaust this claim.

---

[53] Traverse, #20 at 17, n1.
[54] Travers, #20 at 17.
[55] Traverse, #20 at 17.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances.   *Hughes v. Idaho State Board of Corrections,* 800 F.2d 905, 909 (9th Cir. 1986).  Failure to establish cause may be excused under exceptional circumstances, for instance "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Petitioner makes no argument that his procedural defaults should be excused on the basis of actual innocence.

**Dismissal With Prejudice** - In light of Petitioner's unexcused procedural default of his speedy trial claim, this claim must be dismissed with prejudice. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

## B.  GROUND 2 - DENIAL OF RIGHT OF SELF-REPRESENTATION

For his second ground for relief, Petitioner argues that he was denied his right of self representation by denial of access to "adequate law library, writing materials, discovery materials and evidence."[56]  Respondents argue that Petitioner has only exhausted his claim to the extent it was asserted in his Supplemental Opening Brief on direct appeal, which was limited to arguing the denial of an adequate law library and "legal materials."[57]  Respondents argue that the exhausted portion of the claim is without merit.   Petitioner reasserts the cause and prejudice arguments made in connection with Ground One.[58]

### 1.  Exhaustion

Respondents assert[59] and Petitioner does not contest[60] that this ground for relief is exhausted only to the extent that it was raised in Petitioner's Supplemental Opening Brief on direct appeal.  In the brief, Petitioner couched the issue in generic terms of a denial of "a

---

[56] Petition, #1 at 6.
[57] Answer, #13 at 20.
[58] Traverse, #20 at 18.
[59] Answer, #13 at 19-20.
[60] Traverse, #20 at 18.

1   meaningful opportunity to represent himself."[61]   In the factual background of his brief,

2   Petitioner argued that his ability to represent himself was hindered by a host of things,

3   including: being denied his legal files, writing materials,[62] access to the law library,[63] a

4   typewriter, and photocopying.[64] Petitioner further argued that his was not provided mandated

5   disclosures until just shortly before the trial date, which had by then been vacated.[65]

6       While Petitioner did little to join his legal theory to his factual statements, he did raise

7   the relevant legal theory and state the facts.  Moreover, the factual assertions  made were at

8   least as broad as that asserted in Ground One.  Accordingly, the undersigned finds that Ground

9   Two was properly exhausted.

10

11  **2.  Right of Self-Representation**

12      The Arizona Court of Appeals rejected Petitioner's claim on the basis that Petitioner

13  had been provided "both advisory counsel and library access throughout the proceedings."[66] To

14  be entitled to relief, Petitioner must show that the state court's conclusion was erroneous and

15  that it was either contrary to or an unreasonable application of clearly established Federal law,

16  as determined by the Supreme Court. 28 U.S.C. § § 2254(d)(1).

17      **Self Representation** - "Although not stated in the [Sixth] Amendment in so many

18  words, the right to self-representation--to make one's own defense personally--is thus

19  necessarily implied by the structure of the Amendment." *Faretta v. California,* 422 U.S. 806,

20  819 (1975).  The Ninth Circuit has held that the rights of self-representation under *Faretta*

21  "mean, at a minimum, that time to prepare and some access to materials and witnesses are

22  fundamental to a meaningful right of representation." *Milton v. Morris,* 767 F.2d 1443, 1446

23  (9th Cir. 1985).   However, as the Supreme Court recently recognized, that Court has not yet

24  resolve the split among the circuits on whether *Faretta* implies a right to assistance in the

25

26      [61] Exhibit F, Supplemental Opening Brief at 23, ¶ D.
        [62] *Id.* at 2.
27      [63] *Id.* at 3.
        [64] *Id.* at 4.
28      [65] *Id.* at 9.
        [66] Exhibit C, Appellate Decision at 10.

form of library access.  *Kane v. Garcia Espitia,* 126 S.Ct. 407, 408 (2005).  Although *Kane* dealt specifically with a claimed right of access to a law library, there is no basis for distinguishing that form of assistance from any other for purposes of finding a right to such assistance under *Faretta*.

Thus, because the right to assistance recognized in *Milton* is not clearly established Federal law as determined by the Supreme Court as required by 28 U.S.C. § 2254(d)(1), this Court cannot find "based on *Faretta*, that a [denial of assistance to a self-representing defendant] is a basis for federal habeas relief."  *Kane,* 126 S.Ct. at 408.  Accordingly, Petitioner is not entitled to relief on his Ground Two on the basis of his Sixth Amendment right of self-representation.

**Access to Courts** -  Petitioner also asserts that he was entitled to assistance under the Fifth and Fourteenth Amendments.   The Supreme Court has long recognized that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith,* 430 U.S. 817, 828 (1977).

"[A]n inmate alleging a violation of Bounds must show actual injury."  *Lewis v. Casey,* 518 U.S. 343, 349 (1996).  "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense ... [but] must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Id.* at 351.

Here, Petitioner goes to great lengths to decry the inadequacy of the library access, writing materials, advisory counsel assistance, etc. afforded to him during his trial.[67]  However, he alleges only two potential injuries: (1) inability to file a motion to dismiss based upon pre-indictment delay, and (2) inability to supplement a post-trial motion filed by appointed

---

[67] Traverse, #20 at 18-20.

counsel.[68]

As to the pre-indictment delay, Petitioner offers nothing to show that such a motion could have been successful,[69] or that it was not properly brought later when appointed counsel was available to Petitioner.  Indeed, appointed counsel did bring a motion to vacate the judgment which was based in part on "excessive and unjustified preindictment delay."[70]  That motion was rejected by the trial court.[71]  Moreover, the merits of the claim of pre-indictment delay was considered and rejected on its merits by the Arizona Court of Appeals.[72]  Accordingly, this Court cannot find that any limitation on Petitioner's ability to raise this issue during his self-representation resulted in any actual injury.

As to the Petitioner's ability to supplement his post-trial motion, Petitioner offers no indication of what that supplementation would have been or how it could have been successful.  Moreover, Petitioner ignores the fact that he was represented by counsel at the time, rending his own access to legal materials irrelevant.  "The offer of court-appointed counsel to represent [the defendant] satisfied the Fifth Amendment obligation to provide meaningful access to the courts."  *U.S. v. Wilson,* 690 F.2d 1267, 1272 (9th Cir. 1982).[73]  Thus, any relief Petitioner might seek must be based upon a claim that counsel was ineffective in bringing such motion.  Petitioner does not assert such a claim.

---

[68]  Traverse, #20 at 20.

[69]  Under applicable law in Arizona, mere delay is not sufficient to support dismissal.  "To establish that preindictment delay has denied a defendant due process, the defendant must show that the prosecution intentionally delayed proceedings to gain a tactical advantage over or to harass the defendant and that the defendant has actually been prejudiced by the delay." *State v. Monaco,* 207 Ariz. 75, 81, 83 P.3d 553, 559 (Ariz.App. Div. 2,2004) (citing *State v. Broughton,* 156 Ariz. 394, 397, 752 P.2d 483, 486 (1988)).  Petitioner makes no argument or showing that the delay was designed to gain a tactical advantage.

[70]  Exhibit F, Supplemental Opening Brief at 21.

[71]  *Id.*

[72]  Exhibit C, Appellate Decision at 14.

[73]  *Wilson* was rejected in part by *Milton* on the basis that the right of self-representation under *Faretta* included a right of access to law library and other forms of assistance.  However, the *Milton* court specifically declined to decide "whether *Bounds,* 430 U.S. 817... should be interpreted as placing an affirmative duty upon the state to provide a library for the defendant who has rejected the assistance of counsel for trial. *Milton,* 767 F.2d at 1446.

**3.  Summary**

Although Ground Two is properly exhausted, Petitioner has failed to show a right to relief under the Sixth Amendment right to self-representation which is cognizable on habeas review, or the requisite actual injury for relief under the Fifth or Fourteenth Amendments' requirements of due process.  Accordingly, this Ground is without merit and must be denied.

**C.  GROUND 3 - PRIOR BAD ACTS EVIDENCE**

For Ground Three of his Petition, Petitioner argues that he was denied due process by the admission of prior bad acts evidence of Petitioner's assault on his wife and the robbery of a Best Buy store.[74]  Respondents concede that this claim is exhausted,[75] but argue that it is without merit because Petitioner fails to show that there were no permissible inferences to be drawn from the evidence.[76]

Petitioner does not respond to this argument with respect to Petitioner's assault on his wife.  With regard to the Best Buy robbery, Petitioner replies that the state court's determination was based upon an unreasonable determination of the facts as to: (1) the similarities between the Best Buy robbery and the Loomis robbery, and (2) whether the description of the Best Buy robbery given by Petitioner's ex-wife contained details not available to the public.[77]

For purposes of this Report & Recommendation, the undersigned presumes that the evidence was wrongly admitted under applicable constitutional standards.[78]  Even so, constitutional error in the admission of evidence justifies habeas relief only if the admission was not harmless.  "A constitutional error is harmless when 'it appears 'beyond a reasonable doubt that  the error complained of did not contribute to the verdict obtained.'"  *Mitchell v. Esparza,* 540 U.S. 12, 17-18 (2003).

---

[74]  Petition, #1 at 7.
[75]  Answer, #13 at 25.
[76]  *Id.* at 28-29.
[77]  Traverse, #20 at 24-28.
[78]  Violation of state law in admission of the evidence would not be relevant in this proceeding, since "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

The Arizona Court of Appeals concluded that any error was harmless, finding that "considering the strength of the State's other evidence, all of which was unchallenged at trial, Defendant would have been convicted of the Loomis conspiracy and robbery with or without the evidence of the Best Buy robbery."[79]   That state court's harmlessness determination is subject to the limits of 28 U.S.C. § 2254(d)(1), and any error in that determination justifies habeas relief only if the state court "applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell,* 540 U.S. at 18.  Petitioner offers nothing to show that the harmlessness finding of the Arizona Court of Appeals was "objectively unreasonable" or to otherwise show that the evidence was not harmless.

Accordingly, this Court could not grant Petitioner habeas relief even if admission of the evidence had been a due process violation.  Therefore, Ground Three must be denied.

## D.  GROUND 4 - IMPEACHMENT BY PRIOR CONVICTION

For his Ground Four for relief, Petitioner alleges that he was denied his right to testify when the trial court permitted impeachment with a prior conviction, the sufficiency of which the trial court refused to allow Petitioner to challenge.[80]  Respondents concedes that this claim is exhausted, but argue that Petitioner has failed to preserve the issue for review by testifying, or in the absence of such preservation to show that the convictions were unconstitutional or otherwise invalid.[81]  Petitioner simply replies that he was entitled to a hearing on the validity of the convictions.[82]

Petitioner again fails to argue or show that any error in denying his hearing on the priors was not harmless.  *See Luce v. U.S.,* 469 U.S. 38, 43 (1984) (discussing application of harmless

---

[79]  Exhibit C, Appellate Decision at 12.
[80]  Petition, #1 at 8.
[81]  Answer, #13 at 31-32.  Respondents also argue that Petitioner's request for a hearing on this issue was not denied outright, but was denied "without prejudice" and Petitioner failed to reassert it in a timely fashion. *Id.* at 32. However, Petitioner's support for this assertion are copies of the transcript which have not been provided to this Court. Accordingly, this argument is not considered.
[82]  Traverse, #20 at 33-34.

error analysis to impeachment with prior convictions).[83]  Petitioner makes no assertion that any of the convictions sought to be used against him were in fact invalid or not useable against him for some specific reason, *e.g.* that they were too old[84] or were not *his* convictions.  Petitioner merely speculates that had he "been successful in his challenge, the prior conviction could not have been used against him and Petitioner would then have had the option of testifying or not without the specter of being impeached with the prior conviction."[85]

This Ground is without merit and must be denied.

## E.  GROUND 5 - SENTENCING

### 1.  Excessive Sentence

Ground Five of the Petition alleges, in part,  that Petitioner's sentences were excessive and therefore cruel and unusual punishment.[86] Respondents partially concede exhaustion,[87] and argue that Petitioner fails to argue or show any excessiveness in his sentences.[88]  In reply, Petitioner fails to argue any ground for finding his sentences excessive.[89]  Likewise, his Petition offers only the conclusory assertion that his sentences were excessive.

Conclusory allegations that are not supported by specific facts do not merit habeas relief.  *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied, sub. nom James v. White*, 513 U.S.935 (1994).  Accordingly, the undersigned finds this portion of Ground Five for relief to be without merit.

---

[83]  Respondents cite *Luce* for the proposition that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."*Luce*, 469 U.S. at 43.  In so doing, the Court noted that "Because an accused's decision whether to testify 'seldom turns on the resolution of one factor,' a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify.'" *Id.* at 42.  However, *Luce* was a federal prosecution, and contrasted itself from cases "reaching constitutional dimensions".  *Id.* at 43.

[84]  *See e.g.* Rule 609(b) Ariz. Rules of Evid.  (setting a ten year staleness limit for impeachment with a prior conviction).

[85]  Traverse, #20 at 34.

[86]  Petition, #1 at 8[a].

[87]  Answer, #13 at 33.

[88]  *Id.* at 36-38.

[89]  Traverse, #20 at 34-35.

**2.  *Apprendi / Blakely* and Sentencing Factors**

Ground Five of the Petition also alleges that Petitioner's sentences were imposed in violation of *Apprendi v. New Jersey,* 530 U.S. 466 (2000)*,* and *Blakely v. Washington,* 542 U.S. 296 (2004).[90]  Again, Respondents partially concede exhaustion and argue that the claim is without merit because Petitioner's conviction was final at the time these cases were decided, and they are not retroactive on habeas review.[91]

In *Apprendi*, the Supreme Court held that, with the exception of prior convictions, any fact which increases the maximum possible punishment must be determined by the jury and not a judge.  In *Blakely*, the Supreme Court applied *Apprendi* to a state sentencing guidelines system, and found that the Washington state sentencing scheme violated the defendant's right to a jury because a judge determined questions of fact necessary to the application of a sentencing enhancement.

In *Rees v. Hill*, 286 F.3d 1103 (9th Cir. 2002), the Ninth Circuit concluded that *Apprendi* was not retroactively applicable on habeas review, under the retroactivity standards established by *Teague v. Lane,* 489 U.S. 288, 308-310 (1989) (decisions establishing new rules of criminal procedure are not to be applied retroactively on habeas review, absent certain circumstances).     Similarly, in *Cook v. U.S.,* 386 F.3d 949, 950 (9th Cir. 2004), the Ninth Circuit drew upon its decision in *Rees* to conclude that *Blakely* was not retroactively applicable on habeas.

Here, Petitioner's Order and Mandate was issued on November 4, 1999.[92]  At the latest, his conviction would have become final 90 days later, upon the expiration of his time for seeking *certiorari* review by the U.S. Supreme Court. *See* Rule 13, Rules of the Supreme Court of the United States.  Thus his conviction was final long before the June 26, 2000 decision in *Apprendi* and the 2004 decision in *Blakely*. Based upon *Rees* and *Cook*, Petitioner's claims under *Apprendi* and *Blakely* are not cognizable on habeas, and the remainder of his Ground Five

---

[90] Petition, #1 at 8[a].
[91] Answer, #13 at 38-39.
[92] Exhibit I, Order and Mandate.

1  for relief must be denied.

2

3  **F.  GROUND 6 - PRE-INDICTMENT DELAY**

4  For his Sixth Ground for relief, Petitioner argues that he was denied due process by

5  excessive pre-indictment delay.[93]  Respondents concede that this claim has been exhausted, but

6  argue that the claim is without merit.  Respondents argue that Petitioner fails to show the

7  requisite prejudice from any delay, and fails to show that the reasons for the delay justify

8  relief.[94]  Petitioner counters that during the interim between the robbery and his indictment,

9  "several key defense witnesses died or disappeared."[95]  Moreover, Petitioner argues, the Arizona

10  prosecution inherited the case subject to the stigma of any delay occasioned by federal

11  authorities.[96]

12  "[S]tatutes of limitations, which provide predictable, legislatively enacted limits on

13  prosecutorial delay, provide 'the primary guarantee, against bringing overly stale criminal

14  charges.'"  *U. S. v. Lovasco,* 431 U.S. 783, 789  (1977) (quoting *U.S. v. Marion*, 404 U.S. 307,

15  322 (1971)).  Therefore, finding a due process violation where the statute of limitations does

16  not bar a prosecution requires application of two prong test.  The Court must first ascertain

17  whether actual prejudice has resulted from the delay, and then balance the degree of prejudice

18  against the reasons for the delay.  *Id.*; *U.S. v.  Martinez*,  77 F.3d 332, 335 (9th Cir. 1996).

19  "'The task of establishing the requisite prejudice for a possible due process violation is 'so

20  heavy' ' " that the courts have rarely upheld a due process claim.  *Martinez*, 77 F.3d at 335

21  (quoting *U.S. v. Huntley,* 976 F.2d 1287, 1290 (9th Cir.1992).

22  After agreeing "that the pre-indictment delay resulted in loss of some potential witnesses

23  and evidence," the Arizona Court of Appeals rejected this claim on the basis that "[a] person

24  claiming a due process violation must show that the prosecution intentionally slowed

25  proceedings to gain a tactical advantage or to harass the defendant, and that actual prejudice

26  _____

27  [93]  Petition, #1 at 8[b].
     [94]  Answer, #13 at 40-43.

28  [95]  Traverse, #20 at 36.
     [96]  Traverse, #20 at 37.

1   resulted." (Exhibit C, Appellate Decision at 14 (quoting *State v. Lacy,* 187 Ariz. 340, 346,

2   929 P.2d 1288, 1294 (1996)).)  The Arizona court's decision, therefore, turned upon the

3   absence of a harassing motive to the delay.

4     That decision was contrary to the law of the Ninth Circuit, which recognizes claims

5   based upon pre-trial indictment resulting solely from the negligence of the prosecution. *See.*

6   *e.g. U.S. v. Mays*, 549 F.2d 670, 676-677 (9th Cir. 1977) ("The protection afforded by the

7   Due Process Clause has not, in general, been held to demand intentional misconduct on the part

8   of the government before it is applied.").  However, habeas relief is not available for violations

9   of Ninth Circuit law, but only where the state court has acted contrary to "clearly established

10  Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

11  2254(d)(1).

12    As recognized in *Mays*, the Supreme Court has not dictated the level of culpability

13  required for finding a due process violation from pre-indictment delay. *Mays*, 549 F.2d at 676.

14  In *Lovasco* , the Supreme Court specifically found that delays to allow adequate pre-indictment

15  investigation would not suffice.  However, the Court continued its stance from *U.S. v. Marion,*

16  404 U.S. 307, 325 (1971) that they "could not determine in the abstract the circumstances in

17  which preaccusation delay would require dismissing prosecutions." *Lovasco,* 431 U.S. at 796.

18  They noted that few courts had yet reached the question of "the constitutional significance of

19  various reasons for delay," and thus left it to the lower courts to resolve those issues over time.

20    The variability in setting the required degree of culpability under *Lovasco* is highlighted

21  by contrasting the Ninth Circuit with the Fifth Circuit, which has consistently held that some

22  bad faith conduct is required. *See U.S. v. Crouch,* 84 F.3d 1497, 1510 (5th Cir. 1996) (holding

23  that the defendant must show that the delay was an intentional measure to gain a tactical

24  advantage).  In so holding, however, the Fifth Circuit noted that "neither *Marion* nor *Lovasco*

25  is crystal clear on this issue, and each opinion contains some language that can give comfort to

26  either view." *Id.*

27    Accordingly, while the Arizona court's decision may have been contrary to Ninth Circuit

28  law, this Court cannot find that the Arizona decision was"contrary to...clearly established

1  Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. §
2  2254(d)(1).

3      Nor can this Court find that the Arizona decision was an "unreasonable application" of
4  such law.  Assuming that the Arizona Court was free to adopt, as has the Fifth Circuit, a standard
5  requiring some improper motivation by the prosecution, Petitioner has failed to show or even
6  argue any such motivation.  Petitioner simply argues that there was delay and he was prejudiced.
7  However, "proof of prejudice is generally a necessary but not sufficient element of a due
8  process claim...the due process inquiry must consider the reasons for the delay as well as the
9  prejudice to the accused." *Lovasco,* 431 U.S. at 790.

10

11  **G.  GROUND 7 - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

12      For his Seventh Ground for Relief, Petitioner argues that he received ineffective
13  assistance of appellate counsel, when counsel filed an *Anders* brief without reviewing the entire
14  record.[97]  Respondents concede that this claim is properly exhausted, but argue that Petitioner
15  has failed to show how counsel's failure to review the record resulted in prejudice.[98] Petitioner
16  replies that counsel's lack of the record resulted in his failure to identify a variety of viable
17  claims, including a claim challenging the admission of Petitioner's ex-wife's testimony.[99]

18      The Arizona trial court rejected this claim on the basis that the completeness of the
19  record had already been litigated before the Court of Appeals.[100]

20      When appointed appellate counsel has been unable to find a basis for appeal, he may
21  without denying a defendant his right to counsel file what is referred to as an "*Anders* brief",
22  outlining his efforts and the lack of fruit.  *Anders v. State of California,* 386 U.S. 738 (1967).
23  Upon the filing of such a brief, a burden is placed on the appellate court to review the record
24  for error.

25      [T]he court--not counsel--then proceeds, after a full examination of all

26  _____

27  [97]  Petition, #1 at 8[c].
    [98]  Answer, #13 at 43-46.
28  [99]  Traverse, #20 at 39-41.
    [100]  Exhibit N, Order on PCR, at 11.

1

2

3

4

the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

5    386 U.S. at 744.  Petitioner argues that appellate counsel failed to comply with *Anders* because

6    he failed to review the entire record, and thus counsel was ineffective.

7         Generally, claims of ineffective assistance of counsel are analyzed pursuant to

8    *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, petitioner

9    must show both: (1) deficient performance - counsel's representation fell below the objective

10   standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for

11   counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at

12   687-88, 694.   Although the petitioner must prove both elements, a court may reject his claim

13   upon finding either that counsel's performance was reasonable or that the claimed error was not

14   prejudicial.  *Id.* at 697.

15        **Deficient Performance** - To establish deficient performance, Petitioner alleges that

16   counsel failed to review the entire record, including all transcripts.  However, *Anders* did not

17   create an independent duty for counsel to review the entire record.  To the contrary, the duty

18   of counsel is defined in *Anders* to be a matter of conscientiousness:

19

20

21

His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.

22

23

*Anders*, 386 U.S. at 744.  Petitioner offers nothing to show that the portions of the record allegedly  ignored by counsel were necessary to a conscientious review.

24        **Prejudice** - Petitioner must also show prejudice from any defect in counsel's

25   performance of that duty to be entitled to relief.[101]  To do so, Petitioner merely points to the

26

27        [101]  Prejudice need not be shown where there has been a complete denial of counsel, as opposed to merely a

28   claim of ineffective counsel.   Thus, in an *Anders* situation, no prejudice need be shown where counsel has been allowed to withdraw before the appellate court has indeed determined that the appeal is frivolous.  *See Smith v. Robbins*, 528 U.S.

1    claims raised in this habeas petition and to a claim based upon a marital privilege.  However,

2    Petitioner does not offer any connection between the failure to obtain the complete record and

3    the failure to assert these various arguments.  For example, with respect to a claim of marital

4    privilege, appellate counsel was plainly aware that Petitioner's ex-wife testified at trial, and

5    cited to her testimony.[102]  Petitioner offers no suggestion how the incomplete record would

6    have impacted counsel's decision to not assert that or any of Petitioner's other claims of error.

7    Divorced of a connection to the purportedly incomplete record, these assertions are beyond the

8    scope of this Ground for Relief, and subject to assertions of a failure to exhaust.

9        Petitioner has failed to show the requisite deficient performance and prejudice from any

10   failure by appellate counsel to obtain the entire record. This Ground for Relief is without merit

11   and should be denied.

12

13   **H.  GROUND 8 - INEFFECTIVE ASSISTANCE OF COUNSEL AT ARRAIGNMENT**

14       For his Eighth Ground for Relief, Petitioner argues that he received ineffective

15   assistance of counsel at arraignment.[103]  Petitioner alleges:

16           At Petitioner's arraignment, court appointed counsel, someone Petitioner
             had never met or spoken to, jumped up and, over Petitioner's objections,
17           waived Petitioner's rights.  In order to assert his rights, Petitioner had to
             immediately discharge his appointed counsel and proceed
18           unrepresented.[104]

19   Respondents concede that this ground is exhausted, but argue that Petitioner fails to establish

20   deficient performance, and that any "prejudice" resulted not from counsel's actions but

21   Petitioner's choice to discharge counsel rather than consulting with counsel.[105]  Petitioner

22   replies that "[a]n attorney who had never seven spoken to Petitioner could not have been

23   effective," and that had counsel first consulted with Petitioner he would have announced that

24   Petitioner was "ready for trial right away."[106]

25

26   259, 280 (2000).  Here, however, Petitioner does not allege a complete denial of counsel.
         [102] Exhibit E, Appellant's Opening Brief at 12.
27       [103] Petition, #1 at 8[d].
         [104] Id.
28       [105] Answer, #13 at 45-49.
         [106] Traverse, #20 at 42-43.

1        A constitutionally deficient performance is one in which counsel's errors were so great

2   he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Iaea v. Sunn,*

3   800 F.2d 861, 864 (9th Cir. 1986).   An objective standard applies to proving such

4   ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside

5   the wide range of professionally competent assistance, and that the deficient performance

6   prejudiced the defense."   *United States v. Houtcens,* 926 F.2d 824, 828 (9th   Cir.

7   1991)(quoting *Strickland*, 466 U.S. at 687-90).

8        The undersigned finds nothing unreasonable about appointed counsel appearing at an

9   arraignment without first consulting with Petitioner.   Indeed, the Arizona Rules of Criminal

10  Procedure contemplate that an initial appearance and arraignment may be combined into a single

11  hearing when counsel is present. Ariz.R.Crim.P. 4.2(b).   And, one of the functions of the initial

12  appearance is the appointment of counsel.   Ariz.R.Crim.P. 4.2(a)(5).   Thus, the Arizona rules

13  anticipate a freshly appointed attorney representing a defendant at arraignment.

14       Given the limited functions of an initial appearance and arraignment, this is not

15  surprising.  With the exception of addressing issues of conditions of release or in the rare case

16  of an immediate plea of guilty, these appearances are routinely formalistic in nature.  *See e.g.*

17  *State v. Hodge,* 131 Ariz. 63, 64, 638 P.2d 730, 731 (Ariz.App., 1981) ("The purpose of the

18  arraignment and plea is ... to ascertain whether the defendant wants to ... waive a jury trial and

19  permit the court to find him guilty upon his plea.").   The right being waived, to which Petitioner

20  objected, was essentially the right to have the indictment and a litany of procedural rights read

21  to him.[107]   The undersigned can conceive of no reason for counsel to task a court with the

22  laborious process of reading an indictment available in writing and a list of trial rights in which

23  counsel is well schooled.

24       Petitioner complains that this error snowballed into a mandatory self-representation.

25  However, Petitioner was repeatedly offered counsel even after his arraignment.

26       Petitioner also complains that trial counsel should have demanded "an immediate trial

27

28      [107] Exhibit F, Appellant's Supplemental Brief at 2.

setting," and argues that had counsel done so the state's subsequent continuance would never have been granted.[108] Petitioner offers no support for this assertion. Moreover, it would have likely been unreasonable for counsel to have made such a demand before having had an opportunity to not only interview Petitioner, but also investigate the state's case. This was a significant crime, with substantial penalties at stake. The undersigned is unconvinced that competent counsel would have, in any event, demanded immediate trial.

Perhaps, armed with the knowledge that the State would be unprepared to proceed on the eve of the original trial date, a relentless pressing for immediate trial would have been a good strategic choice. However, the reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689. Counsel could not have known at arraignment that the prosecution would not make good use of the subsequent time until trial. Moreover, the choice to press the issue that early in the proceedings would have been a tactical choice. "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

This Ground for Relief is without merit and should be denied.

## I. GROUND 9 - LACK OF FULL RECORD ON APPEAL

For his ninth and final Ground for Relief, Petitioner argues the he was denied due process by the appellate court's ruling on the basis of appellate counsel's *Anders* brief and Petitioner's supplemental brief without reviewing the entire record.[109] Respondents argue that this claim is procedurally defaulted because Petitioner should have raised the claim in his Petition for Review to the Arizona Supreme Court.[110] Respondents argue alternatively that Petitioner fails to show how the lack of records prejudiced him and thus denied him due

---

[108] Traverse, #20 at 43.
[109] Petition, #1 at 8[e].
[110] Answer, #13 at 49-50.

1  process.[111]  Petitioner replies that any procedural default was caused by appellate counsel's

2  ineffectiveness.[112]

3       Petitioner first presented this claim in his Petition for Post-Conviction Relief.  The

4  Arizona trial court rejected this claim, finding that it was an accusation "of misconduct upon the

5  part of the judges on the Court of Appeals and should have been included in a petition for review

6  by the Arizona Supreme Court."[113]  Thus, the court concluded that the claim was "precluded

7  pursuant to the provisions of Rule 32.2, Arizona Rules of Criminal Procedure."[114]  Federal

8  habeas review of a defaulted federal claim is precluded when the state court has disposed of the

9  claim on a procedural ground "that is both 'independent' of the merits of the federal claim and

10  an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

11  Petitioner makes no assertion that this claim was not procedurally defaulted, or that Rule 32.2

12  is not an independent and adequate state ground.

13       Rather, Petitioner asserts that his procedural bar should be ignored because it was caused

14  by appellate counsel's deficient representation.  Indeed, ineffective assistance of counsel may

15  constitute cause for failing to properly exhaust claims in state courts and excuse procedural

16  default.  *Ortiz v. Stewart,* 149 F.3d 923, 932, (9th Cir. 1998).  However, to meet the "cause"

17  requirement, the ineffective assistance of counsel must amount to an independent constitutional

18  violation.  *Id.*  "Ineffective assistance of counsel can constitute cause to excuse a procedural

19  default only if the petitioner had a constitutional right to counsel in the proceeding in which the

20  default occurred." *Smith v. Idaho,*  392 F.3d 350, 356 -357 (9th Cir. 2004).  "It is

21  well-established that criminal defendants have no constitutional right to counsel beyond their

22  first appeal as of right, and hence no right to counsel in a discretionary appeal to the State's

23  highest court."  *Id.*  Having had his first appeal as of right to the Arizona Court of Appeals,

24  Petitioner had no constitutional right to counsel before the Arizona Supreme Court.

25       Moreover, a claim of ineffective assistance of counsel showing "cause" is itself subject

26

27  [111] *Id.* at 50-51.
   [112] Traverse, #20 at 43-45.

28  [113] Exhibit N, Order on PCR at 8.
   [114] *Id.*

to the exhaustion requirements.  *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Edwards v. Carpenter,* 529 U.S. 446 (2000).  Accordingly, "[t]o the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court." *Tacho v. Martinez,* 862 F.2d 1376, 1381 (9th Cir. 1988).  Petitioner has not shown that he exhausted his state remedies on a claim that appellate counsel was ineffective in representing Petitioner before the Arizona Supreme Court.

Accordingly, Petitioner has failed to show cause excusing his procedural default of this Ground for Relief, and it must be dismissed with prejudice.

**J.  SUMMARY**

Petitioners Grounds One and Nine are procedurally defaulted, and Petitioner has failed to excuse the default.  Accordingly, these grounds must be dismissed with prejudice.  The remainder of Petitioner's Petition is without merit, and must be denied.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds for Relief One and Nine of Petitioner's Petition for Writ of Habeas Corpus, filed December 3, 2004 (#1) be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that remainder of Petitioner's Petition for Writ of Habeas Corpus, filed December 3, 2004 (#1) be **DENIED.**

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to

1    file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section

2    2254 proceedings. Thereafter, the parties have ten (10) days within which to file a response to

3    the objections.  Failure to timely file objections to any factual or legal determinations of the

4    Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the

5    issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

6

7

8    DATED: April 17, 2006

9

_____

JAY R. IRWIN

United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28